# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## JEFFERY L. VAUGHN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**No. C95-37     Lee Moore, Judge**

---

**No. W1999-01490-CCA-R3-PC  - Decided April 6, 2000**

---

Jeffery L. Vaughn appeals from the Dyer County Circuit Court's denial of his petition for post-conviction relief following an evidentiary hearing.  He contends that he was deprived of his constitutional right to a fair trial because jurors allegedly overheard a bench conference regarding his prior criminal record.  He also contends that he received the ineffective assistance of counsel at trial due to his counsels' failure to inform him of the correct sentencing range, to have the cocaine independently weighed, to present the testimony of his drug counselor, and to move for an acquittal at the end of the proof.  We affirm the trial court's denial of the petition for post-conviction relief.

**T.R.A.P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIPTON, J., delivered the opinion of the court, in which WELLES, J., and LAFFERTY, Sr.J., joined.

Stephen D. Scofield, Dyersburg, Tennessee, for the appellant, Jeffery L. Vaughn.

Michael Moore, Solicitor General of Tennessee; J. Ross Dyer, Assistant Attorney General of Tennessee; C. Phillip Bivens, District Attorney General; and James E. Lanier, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

The petitioner seeks post-conviction relief from his conviction by a jury for possession of over one-half gram of cocaine with the intent to sell, a Class B felony.  He is serving sixteen years as a Range II, multiple offender consecutively to a prior sentence in the Department of Correction. This court affirmed his conviction and sentence on direct appeal.  State v. Jeffery L. Vaughn, No. 02C01-9601-CC-00006, Dyer County (Tenn. Crim. App. Mar. 27, 1997), app. denied (Tenn. Nov. 17, 1997). The petitioner contends that:

> (1) he was deprived of his constitutional right to a fair trial because
> a bench conference regarding his prior criminal record was loud
> enough for the jurors to hear, and
>
> (2) he received the ineffective assistance of counsel at trial due to his

counsel's failure:

(a) to inform him of the correct range of punishment while he was considering the state's plea offer;

(b) to have the cocaine independently weighed;

(c) to subpoena his drug counselor or ask for a continuance when he could not locate the counselor; and

(d) to move for an acquittal at the end of the proof.

Our opinion on direct appeal gives the following account of the offense:

> The appellant was stopped by officers on bike patrol in Dyersburg, Tennessee. As the appellant got out of his vehicle, both officers witnessed him attempting to chew a substance that appeared to be contraband. He was immediately asked to spit out the substance. He did not comply. The officer sprayed the appellant with "freeze," a chemical agent similar to Mace, to force him the spit out the substance. He complied and was arrested. He had $667.00 and 1.4 grams of cocaine in his possession at the time of his arrest.

> At trial, the appellant took the position that the cocaine he possessed was for his personal use and not intended for resale. In support of his position he presented two witnesses who testified that he had won the $667.00 gambling the day of his arrest. Also, his girlfriend testified that the appellant used crack cocaine and had stolen money in the past to buy crack.

Slip op. at 2.

At the evidentiary hearing, the petitioner testified that he was initially represented by Steve Davis and that he hired Charles Agee before trial. He said that Mr. Davis told him that he was a Range II offender with a sentencing range of eight to twelve years. He said that Mr. Davis told him about a plea offer of nine years, but he turned it down. He said that Mr. Agee also told him that he was facing a potential eight-to-twelve-year sentence at trial. He said that he did not learn that he was facing twelve to twenty years until he read it in the newspaper after he was found guilty. At his sentencing hearing, the trial court told him that his range of punishment was twelve to twenty years. He said he probably would have accepted the nine-year offer if he had known the correct range, but he was not sure because at the time, he did not believe he was guilty of possession with the intent to sell.

The petitioner testified that the first time he discussed his case with Mr. Agee, he gave the names of the witnesses he wanted at the trial, including Mr. Tommy Bottoms, his drug counselor.

He said he wanted Mr. Bottoms to testify that he was a drug user to establish that he did not intend to sell the cocaine. He said that Mr. Bottoms would have been a better witness than the other witnesses who testified that he was a user because Mr. Bottoms was in the drug treatment field.

The petitioner testified that the cross-examination of Kay Sherriff, the state's expert, made him feel that she was confused, incompetent, and covering up for the state. He said that when he saw the bag of crack cocaine, he doubted that it contained fourteen to forty-two rocks. He said that he saw a few true rocks and a couple of fragments. He said that he asked Mr. Agee to have the cocaine independently weighed and that Mr. Agee agreed but then never mentioned it again. He agreed that at the sentencing hearing, he told the trial court that on the day of the offense, he had fourteen rocks that he bought for one hundred dollars.

The petitioner testified that at trial, the prosecutor asked for a bench conference in which he discussed questioning a defense witness about the petitioner's criminal record. The petitioner said that he heard the discussion while sitting at the counsel table and believed that the jury must have heard it also. He said he did not mention this earlier because he had already declined to testify. He said he told his attorney about it. The petitioner agreed that the witness testified that she never knew of the petitioner selling drugs. He said that his attorney should have moved for an acquittal at the end of the proof because Ms. Sherriff changed her testimony on cross-examination and because the prosecutor was trying to make it seem as if he possessed a huge number of rocks.

Tommy Bottoms testified that before the present offense, the petitioner was in his care for counseling due to his drug and alcohol addiction. Mr. Bottoms met with the petitioner in a state parole drug education group and at the Northwest Counseling Center on an outpatient basis. Mr. Bottoms' dealings with the petitioner all resulted from the petitioner's prior criminal activity and incarceration. Mr. Bottoms remembered that the petitioner admitted his drug problem. He said that the petitioner never brought up selling drugs in his counseling sessions. He could not recall any other details of the petitioner's case.

Steve Davis testified that he was a public defender appointed to represent the petitioner. He did not recall discussing a plea offer with the petitioner and had no notes in his file about such a discussion. He recognized a letter from the District Attorney to the petitioner in which the state offered a nine-year sentence. The letter stated that if the offer were rejected, then the state would file notice of its intent to seek a Range II sentence. Mr. Davis did not recall, and his notes did not reflect, that he discussed Range II sentencing with the petitioner. He explained that he did not prepare for trial because the petitioner hired Mr. Agee to represent him.

Charles Agee testified that the petitioner hired him two weeks before trial. The petitioner had an extensive criminal history and, if convicted, was facing substantial jail time consecutive to some prior sentences. He remembered discussing the nine-year plea offer with the petitioner. They discussed the range of punishment, and he suspected that he told the petitioner that the range was twelve to twenty years. Mr. Agee thought that going to trial was an easy decision for the petitioner because the petitioner knew he was facing a consecutive sentence of ten years in addition to the nine offered. The trial strategy was to get the jury to convict for simple possession, a misdemeanor,

rather than possession with intent to sell. He said that he and the petitioner felt like this was the only viable option in the petitioner's case.

Mr. Agee testified that Tommy Bottoms was a very important witness for the petitioner and that he would have called Mr. Bottoms if he could have located him. He said that the other witnesses who testified that the petitioner used drugs knew the petitioner personally. He believed that Mr. Bottoms' testimony would have carried greater weight with the jury. He did not recall moving for a continuance in order to locate Mr. Bottoms. He said that when he spoke with Mr. Bottoms after the trial, Mr. Bottoms said that the petitioner did not want him as a witness.

Mr. Agee testified that he never considered having the cocaine independently weighed and that he did not discuss this with the petitioner. He said that he did not see any disparity between the appearance of the evidence and the state's weight. He said that he saw no need to have the cocaine reweighed.

Mr. Agee testified that he remembered participating in a bench conference regarding the petitioner's criminal record. He said that the state wanted to show that the petitioner had previously sold cocaine but that the trial court excluded this evidence. He did not know whether the bench conference was loud enough for the jury to hear. He said that if the petitioner heard the conference, then there was a strong possibility that the jurors also heard it. He said the petitioner never commented to him at trial that he had overheard the bench conference. He said that if the petitioner had made such a comment, he would have raised the issue at trial. He said that a motion for an acquittal was unnecessary in this case because the only issue was whether the offense was simple possession or possession with intent to sell, which was a question of fact for the jury.

### I. BENCH CONFERENCE

The petitioner contends that he was denied his right to a fair trial because the jury learned of his prior conviction for selling cocaine by overhearing a bench conference. He states that the trial court had excluded this conviction, but he claims that he overheard the bench conference and that the jury must have also overheard it. The state contends that the petitioner has failed to show that he was prejudiced because he has not shown that the jury overheard the bench conference.

In a post-conviction case, the petitioner must prove the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). We will uphold the trial court's findings of fact unless the evidence preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). In this case, the trial court found that the petitioner failed to prove that any juror overheard the bench conference or that he had suffered any prejudice even if the jury had overheard the conference.

The evidence does not preponderate against the trial court's finding that the petitioner failed to prove that the jurors overheard the bench conference. The petitioner testified that he overheard the bench conference from the counsel table and that the jury must have also overheard it. The petitioner's trial attorney testified that the petitioner did not mention at trial that he had overheard

the bench conference. The attorney said that if the petitioner had told him that he overheard the bench conference, he would have raised the issue at trial. The petitioner did not present the testimony of any juror at the evidentiary hearing. The petitioner has failed to prove by clear and convincing evidence that the jurors overheard the bench conference on his prior conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel because his attorneys failed to inform him of the correct range of punishment, to have the cocaine independently weighed, to gain his drug counselor's testimony at trial, and to move for an acquittal at the end of the proof. When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

We also note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

The petitioner must show both deficiency and prejudice by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Since the creation of post-conviction procedures, the findings of the trial court in a post-conviction case have been given the weight of a jury verdict. See Janow v. State, 4 Tenn. Crim. App. 195, 200, 470 S.W.2d 19, 21 (1971). Our long-standing standard of review on appeal bound us to the trial court's findings of fact unless we concluded that the evidence preponderated against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Our traditional standard prevented us from reweighing or reevaluating the evidence, or substituting our own inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997) (reviewing the issue of the ineffective assistance of counsel). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony were resolved by the trial court, not this court. Id. This court has held that it would give due deference to the trial court's

findings regarding the ineffective assistance of counsel under the well-settled standard set forth in Henley. Richard C. Taylor v. State, No. 01C01-9707-CC-00384, Williamson County, slip op. at 26 (Tenn. Crim. App. July 21, 1999).

While reaffirming the Henley standard for purely factual issues, our supreme court recently stated that "the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact" requiring a de novo review by this court. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We do not believe that the supreme court intended in one sentence, without further discussion, to overrule sub silentio over thirty years of jurisprudence regarding the standard of review in post-conviction cases. Thus, we believe that the standard of review remains whether the evidence preponderates against the trial court's finding that the petitioner received the ineffective assistance of counsel. In any event, we believe that either standard yields the same result in this case.

### A. Sentencing Range

The petitioner contends that his attorneys were ineffective for failing to advise him of the correct range of punishment for a Range II offender. He claims that he was told that the range was eight to twelve years, rather than twelve to twenty years. He argues that this information was vital to his decision to accept or reject the state's plea offer of nine years. The state contends that the petitioner has failed to show prejudice because the proof does not show that he would have accepted the nine-year offer had he known the correct range.

The trial court found that the petitioner failed to prove prejudice because he did not testify that he would have accepted the nine-year offer if he had known the correct range. At the evidentiary hearing, the petitioner was not sure whether he would have accepted the nine-year offer even if he had known the correct range. While his attorneys could not recall specifically telling the petitioner that the range was twelve to twenty years, Mr. Agee testified that the petitioner knew he was facing an effective nineteen-year sentence if he accepted the plea and a substantial sentence if convicted of the present offense. Mr. Agee said that he and the petitioner thought that going to trial with the hope of gaining a conviction for simple possession was the only viable option. Thus, the petitioner has failed to show that he was prejudiced even if counsel did not inform him of the correct range.

### B. Independent Weighing

The petitioner contends that his trial attorney was ineffective for failing to have the crack cocaine independently weighed to determine if the state's expert gave the correct weight. He argues that this information determined the severity of the charge because less than one-half gram is a misdemeanor. The state contends that the petitioner has failed to show either deficiency or prejudice because he has provided no proof that the crack cocaine would have weighed less than one-half gram if independently weighed.

The trial court found that the petitioner provided no evidence that an independent weighing would have revealed that the crack cocaine weighed less than one-half gram. It found that the evidence presented at trial indicated that the crack cocaine weighed far in excess of the necessary

one-half gram. At the evidentiary hearing, the petitioner testified that when he saw the bag of crack cocaine at trial, he doubted that it contained fourteen to forty-two rocks. He admitted that at the sentencing hearing, he said that he had fourteen rocks on the day of the offense. The trial attorney testified that he never considered having the cocaine independently weighed and that he saw no disparity between the appearance of the evidence and the state's weight. At trial, Kay Sherriff, the state's forensic scientist, testified that the crack cocaine weighed 1.4 grams. She said that she did not count the number of rocks of crack cocaine in the present case but that the average sample she received contained one to three rocks, weighing one-tenth of a gram. She testified that based upon this average amount, 1.4 grams of crack cocaine would contain between fourteen and forty-two individual rocks. On cross-examination, she repeated that the amount of fourteen to forty-two rocks was just an average. The record does not preponderate against the trial court's finding that the petitioner has failed to show prejudice

### C. Failure to Call Witness
The petitioner contends that he received the ineffective assistance of counsel because his attorney failed to subpoena Tommy Bottoms, his drug counselor, or to move for a continuance until Mr. Bottoms could be located. He states that Mr. Bottoms would have testified that he was a drug addict, which would have supported his defense that he possessed the cocaine for his personal use. He argues that as an independent professional, Mr. Bottoms was a very important witness for his defense. The state contends that Mr. Bottoms' testimony would have been cumulative at best; therefore, the petitioner has failed to show prejudice.

The petitioner's attorney testified that Mr. Bottoms was an important witness for the petitioner and that he would have called Mr. Bottoms at trial if he could have located him. He said that the other witnesses who testified that the petitioner used drugs knew the petitioner personally. He believed that Mr. Bottoms' testimony would have carried greater weight with the jury. At the hearing on the motion for a new trial, the attorney said:

> Even though I didn't move for a continuance in this case, we had talked to . . . a key witness . . . that would strongly suggest that Mr. Vaughn was a drug user or drug addict. That was Mr. Bottoms with the Baptist Memorial alcohol and drug department. Mr. Bottoms, as you know, is a regular in the courts of this county, and he's here on a regular basis. And we contacted Mr. Bottoms after talking to Mr. Vaughn and told him that we planned to subpoena him for this case. This was a couple of days or so before the hearing when I found that he may be a material witness. . . . Mr. Bottoms said, "Don't worry, I'm up there every day. I'll be there."
>
> . . . [O]n the day set for trial . . . I . . . was told . . . that [Mr. Bottoms] had a family emergency and would not be in court.

The attorney said that he believed that the petitioner would address Mr. Bottoms' absence in a future post-conviction petition. At the evidentiary hearing, Mr. Bottoms testified that he counseled the petitioner for his drug and alcohol addiction. The trial court found that the petitioner had two witnesses who testified at trial that he used drugs. It determined that the petitioner had failed to

show that Mr. Bottoms would have convinced the jury that he was only a user and not a seller. It concluded that Mr. Bottoms' testimony would have been merely cumulative.

The record does not support the trial court's finding that the petitioner had two witnesses who testified that he was a drug user. At trial, the petitioner called three witnesses in his defense. Lashonda Fowlkes testified as follows: She had known the petitioner all of her life and saw him shooting dice on the corner on the day of the offense. She noticed that the petitioner was winning and had a lot of money. Later that day, she heard that he had bought drugs with the money and then was arrested. Tenisha Dixon testified as follows: She knew the petitioner and saw him gambling on the corner on the day of the offense. She overheard the petitioner bragging that he was winning, and she saw him with a pile of money. She heard that he was arrested not too long after that. Walinda Baker testified that the petitioner had been her boyfriend for two years. She said that she had seen him use crack cocaine and that he stole money from her to buy crack cocaine. She said that she had never known him to sell cocaine. Thus, only one witness, Ms. Baker, testified that the petitioner used crack cocaine while Ms. Fowlkes merely said that she had heard that the petitioner bought drugs with his gambling proceeds. Neither witness testified that the petitioner was a drug addict, as Mr. Bottoms would have.

"Trial counsel has a duty to use witnesses who may be of assistance to the defense." State v. Zimmerman, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991). The petitioner's attorney wanted Mr. Bottoms to testify and believed Mr. Bottoms to be an important witness to their claim that the petitioner possessed the crack cocaine for his personal use. We believe that the attorney's failure to subpoena Mr. Bottoms or to request a continuance until Mr. Bottoms could appear fell below the range of competence demanded of attorneys in criminal cases.

The question now becomes whether the attorney's failure to take steps to gain the testimony of this known witness deprived the petitioner of critical evidence to his prejudice. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (holding that presenting the witness at the evidentiary hearing is the only way for the petitioner to prove that he was denied critical evidence). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066; Burns, 6 S.W.3d at 463. The petitioner must show by clear and convincing evidence that he or she was prejudiced by the attorney's error. To determine if the petitioner suffered prejudice, we look to whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Burns, 6 S.W.3d at 463. "A reasonable probability of being found guilty of a lesser charge satisfies the prejudice prong of Strickland." Burns, 6 S.W.3d at 463; Zimmerman, 823 S.W.2d at 227.

We do not believe that the petitioner was prejudiced by the absence of Mr. Bottoms' testimony that he was addicted to drugs. Ms. Baker testified that the petitioner used crack cocaine and that he stole money in order to buy crack cocaine. Thus, the petitioner did present proof that he was a user rather than a dealer. He also elicited evidence that he possessed the cocaine for his

personal use even though the amount exceeded one-half gram. Ernie Roberts, a narcotics officer with the Dyersburg Police Department, testified that it was unusual for someone to purchase more than five or six rocks of crack cocaine for their personal use. On cross-examination, Officer Roberts said that a regular user would feel the effects of smoking one rock of crack cocaine for about fifteen to twenty minutes and that if he or she wanted to stay high, the user would have to keep smoking. He admitted that he had heard of people smoking crack cocaine all day long. Despite this evidence on the use of cocaine, the jury determined that the petitioner intended to sell the crack cocaine in his possession. We do not believe that a reasonable probability exists that the jury would have convicted the petitioner of simple possession had they heard Mr Bottoms' testimony that the petitioner was a drug addict. Thus, the attorney's failure to subpoena Mr. Bottoms or request a continuance when the witness was unable to appear did not prejudice the petitioner. Although only one witness rather than two testified that the petitioner used cocaine, the record does not preponderate against the trial court's finding that the petitioner failed to show prejudice.

### D. Failure to Move for an Acquittal

The petitioner contends that his trial attorney was ineffective for failing to move for an acquittal at the end of all proof. He argues that he was thereby denied the opportunity to have the trial court evaluate the sufficiency of the proof. The state contends that the petitioner has failed to prove either deficiency or prejudice because the only issue at trial was whether the offense was simple possession or possession with intent to sell, a question of fact for the jury. The trial court credited the attorney's testimony that a motion for acquittal had no chance for success because the only issues were ones of fact for the jury. The attorney's uncontradicted testimony revealed that he and the petitioner thought that the only viable option was to get the jury to convict for simple possession rather than possession with intent to sell. The evidence does not preponderate against the trial court's findings.

Based upon the foregoing and the record as a whole, we affirm the trial court's denial of the post-conviction petition.